## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **UNITED STATES OF AMERICA and** ) | |
| **PEOPLE OF THE VIRGIN ISLANDS,** ) | |
| ) | |
| **v.** ) | |
| ) | **Criminal Action No. 2013-0003** |
| **ELVIN WRENSFORD and** ) | |
| **CRAIG MULLER,** ) | |
| ) | |
| **Defendants.** ) | |
| ————————————————————————) | |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
**Rhonda Williams-Henry, Esq.,**
St. Croix, U.S.V.I.
    *For the Government*

**Omodare B. Jupiter, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Elvin Wrensford*

**Martial A. Webster, Sr., Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Craig Muller*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the Motion to Dismiss filed by Defendant Elvin Wrensford on January 9, 2015. (Dkt. No. 183). In his Motion, Wrensford seeks dismissal of the Indictment filed against him on Speedy Trial Act and Sixth Amendment grounds. Defendant Craig Muller joined the Motion on January 23, 2015 (Dkt. No. 189), and the Government filed an Opposition on January 24th. (Dkt. No. 190). For the reasons that follow, the Court will deny the Motion to Dismiss.

# I.    PROCEDURAL HISTORY

On January 29, 2013, Defendants Wrensford and Muller were indicted on the following charges: Possession of a Firearm in a School Zone, in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(1)(B); Using a Firearm During a Violent Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); Unauthorized Possession of a Firearm, in violation of 14 V.I.C. § 2253(a); and Murder in the First Degree, in violation of 14 V.I.C. §§ 922(a)(1) and 923(a). (Dkt. No. 1). Wrensford was also charged with Possession of a Firearm with Obliterated Serial Number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). *Id.*[1] Both Wrensford and Muller were arraigned on February 5, 2013. (Dkt. Nos. 4, 6).

On February 8, 2013, the Government filed a Motion *in Limine* regarding the admission of prior conduct by Defendants. (Dkt. No. 8).

On February 15, 2013, the Court set a trial date for March 25, 2013. (Dkt. Nos. 9, 10). On March 12, 2013, Wrensford moved to continue the trial because counsel was reviewing discovery, investigating the case, and exploring plea options. (Dkt. No. 10). The Court granted the motion that same day, re-scheduling the trial for April 29, 2013. (Dkt. No. 11). On April 18,

---

[1] Prior to the filing of the Indictment, an Information had been filed as to Wrensford and Muller on June 11, 2012. (Dkt. No. 1 in 12-cr-12). The Indictment differed from the Information in that the Indictment added a new charge against both Wrensford and Muller—Using a Firearm During a Violent Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii)—and omitted the charge of Possession of a Firearm with an Altered Identification Mark, in violation of 23 V.I.C. § 481(b), that was charged against Wrensford in the Information. Both Defendants were arrested on June 14, 2012 (Dkt. Nos. 23, 25 in 12-cr-12), and the Government moved to detain them that same day. (Dkt. No. 9 in 12-cr-12). The Government's Motion to Detain was granted by the Magistrate Judge (Dkt. No. 18 in 12-cr-12), whose decision was subsequently affirmed on appeal to the District Court on December 4, 2012. (Dkt. No. 56 in 12-cr-12). On that same day, the Court also denied Wrensford's Motion to Dismiss the charges against him. (Dkt. No. 57 in 12-cr-12). On January 16, 2013, Wrensford filed his first motion to continue the trial date in this matter by requesting that the trial then scheduled for January 28, 2013 be continued to March 25, 2013. (Dkt. No. 63 in 12-cr-12). On February 7, 2013, the Court granted the Government's Motion to Dismiss the Information because an Indictment had been filed against Defendants on January 29, 2013. (Dkt. No. 66 in 12-cr-12).

2013, both Wrensford and Muller moved to continue the trial, asserting that their investigation of the case was continuing and several issues remained to be resolved prior to trial. (Dkt. Nos. 22, 23). The Court granted the motion that day, stating that a new trial date would be set at calendar call on May 15. (Dkt. No. 24). At the May 15, 2013 calendar call, the Court set the trial for September 16, 2013 (Dkt. No. 25), and on July 16, 2013, the Court issued a Trial Management Order with that trial date. (Dkt. No. 30).[2]

On August 12, 2013, Wrensford again moved to continue the trial. (Dkt. No. 31). Counsel explained that he had not completed his investigation nor made a final decision on which experts to use at trial; that there were significant issues that needed to be resolved once the investigation was complete; and that counsel had scheduling conflicts with other trials. *Id.* The Court held a hearing and, on August 23, 2013, granted the motion and scheduled the trial for January 21, 2014. (Dkt. No. 34).

A series of motions were then filed by Defendants: (1) a Motion to Suppress filed by Defendant Muller on September 3, 2013 (Dkt. No. 36); (2) an *Ex Parte* Motion filed by Defendant Muller on October 9, 2013 (Dkt. No. 40); (3) a Motion for a *Daubert* Hearing filed by Defendant Wrensford on November 22, 2013 (Dkt. No. 52) and joined by Muller on December 16, 2013 (Dkt. No. 65); and (4) a Motion to Suppress filed by Defendant Wrensford on November 22, 2013 (Dkt. No. 53), and joined by Muller on December 16, 2013 (Dkt. No. 66). These motions, described below, proceeded to adjudication as follows.

---

[2] The Trial Management Order included, *inter alia*, dates for the filing of motions *in limine* and oppositions thereto. (Dkt. No. 30). Such trial-related motions are typically heard and/or resolved by the Court in close proximity to, or during, the trial, thus allowing for the fullest possible development and articulation of the issues and consideration by the Court of any contextual evidence, if necessary, that may be developed at trial.

Muller's September 3, 2013 Motion to Suppress challenged a witness's identification of him from a pretrial identification procedure as unnecessarily suggestive. (Dkt. No. 36). Following briefing that concluded on October 4 and a motion by Muller to continue the evidentiary hearing (Dkt. No. 46), originally scheduled for November 21, 2013, the Court re-scheduled the hearing for December 19, 2013. (Dkt. No. 54). Muller's Motion to Suppress was denied on March 24, 2014. (Dkt. Nos. 108, 109).

Muller's October 9, 2013 *Ex Parte* Motion was adjudicated by Magistrate Judge George W. Cannon, Jr. the following day. (Dkt. No. 42). Muller filed a Notice of Appeal on October 25, 2013. (Dkt. No. 45). Because the Notice of Appeal did not include the basis for the objection, nor was it followed by a brief with reasons and citation of authorities as required by the Court's Local Rules, the Court—by Order entered on November 18, 2013—allowed Muller until December 2, 2013 within which to refile his Appeal in compliance with the Local Rules. (Dkt. No. 50). The Appeal was refiled on December 2, 2013 (Dkt. No. 59) and an opinion was issued by the Court on May 2, 2014. (Dkt. Nos. 114, 115).

Wrensford's November 22, 2013 Motion for a *Daubert* Hearing—joined by Muller (Dkt. No. 65)—challenged both the Government's DNA and firearm/toolmark expert witnesses. (Dkt. No. 52). As to each witness, the Motion challenged the witness' qualifications, the reliability of the witness' conclusions, and the science underlying the witness' analyses and opinions. *Id.* The Court held hearings on February 10, 2014 (DNA expert) and February 28, 2014 (firearm/toolmark expert), and issued opinions on March 25, 2014 denying the *Daubert* motion challenging the DNA expert (a twenty-three page opinion) (Dkt. Nos. 110, 111) and on July 28, 2014 denying the *Daubert* motion challenging the firearm/toolmark expert (a thirty-five page opinion). (Dkt. Nos. 135, 136).

Wrensford's Motion to Suppress—also filed on November 22, 2013 and joined by Muller (Dkt. No. 66)—challenged the warrantless search of Wrensford, statements taken from him while under interrogation, and the collection of his DNA. (Dkt. No. 53). Following the Government's Opposition, Wrensford's Reply Brief was filed on January 7, 2014. (Dkt. No. 72). The Court held a hearing on the motion on January 17, 2014 and ordered post-hearing briefing (Dkt. No. 78) that was completed on February 7, 2014. (Dkt. No. 89). In his post-hearing brief, Wrensford raised a new suppression argument—that his identification by two witnesses on the evening of the shooting was unnecessarily suggestive. Wrensford acknowledged that this new argument would require an additional hearing, stating in his Memorandum that, "[i]n fairness, the government should have an opportunity to present evidence at a hearing if it so chooses since counsel is briefing this issue for the first time." (Dkt. No. 81 at 5 n.1). In its Supplemental Response, the Government requested "an opportunity to present additional evidence on this issue prior to argument thereon." (Dkt. No. 85 at 6). The Court held a reconvened suppression hearing on June 26, 2014. On August 11, 2014, the Court issued a forty-six page Memorandum Opinion addressing all of the issues raised by Wrensford, with an Order granting in part and denying in part Wrensford's suppression motion. (Dkt. No. 137, 138).

With regard to trial-related motions, in addition to the Government's Motion *in Limine* filed in February 2013, Muller filed a motion to admit additional evidence under Federal Rule of Evidence 201 in December 2013 (Dkt. No. 68), and a supplement to that motion in January 2014 (Dkt. No. 73). On December 16, 2014, the Government requested that a hearing be scheduled on the two outstanding motions (Dkt. No. 176), and on January 25, 2015, the Government filed an opposition to Muller's motion. (Dkt. No. 191). The Government's and Muller's motions are

pending and—consistent with the Court's practice—will be addressed shortly before or during trial. *See* n.2, *supra*.

Following the issuance of its suppression opinion in August 2014, the Court endeavored to set a trial date in this matter. At a regularly-scheduled calendar call, Magistrate Judge Cannon informed counsel that the Court could schedule the trial in October 2014, but not November 2014 when the Court would be unavailable. On August 27, 2014, the parties filed a "Joint Request for Trial Date Certain" in which they stated that they anticipated that jury selection would last one day; that the trial would consume approximately two weeks; and that a trial date, "set far in advance of trial, will facilitate the parties' efficient preparation for this trial and all others set for [the] remainder of this year." (Dkt. No. 142). The parties suggested in the Joint Request that jury selection commence on Friday, November 7, 2014, and that the trial commence on Monday, November 10, with closing arguments on Monday, November 24—noting that this schedule would be "desirable." *Id.* In suggesting the trial date, the parties also "considered that jury appearance and enthusiasm would be severely reduced during the Thanksgiving and Christmas holidays," which would "hamper a fair and just trial." *Id.* The Joint Request indicated that Wrensford preferred that the trial be scheduled during October, but counsel for Muller stated that an October trial would present scheduling conflicts for him. *Id.* The Joint Request also stated that the Government had calculated that only ten speedy trial days had expired, and that there were two outstanding motions to be decided: the Government's Motion *in Limine* to admit prior conduct (Dkt. No. 8); and Muller's motion and supplement to admit additional evidence. (Dkt. Nos. 68, 73). *Id.*

On August 28, 2014, the Court issued a Trial Management Order, scheduling the jury trial for October 6, 2014. (Dkt. No. 143). The Court indicated that while it had considered the parties' request for a November 7-24 trial, it was unavailable during that period. *Id.*

On September 4, 2014, Muller filed a "Motion to Continue Jury Selection and Trial Scheduled for October 6, 2014," indicating that counsel was unavailable due to previously-scheduled trials during October. (Dkt. No. 144). On September 5, 2014, Wrensford opposed Muller's Motion to Continue (Dkt. No. 146), and filed a Motion to Sever, in which he objected to a continuance, reiterated that he preferred an October trial date, and requested that the Court sever the trial and proceed with the October 6, 2014 trial date as to him. (Dkt. No. 147). Wrensford claimed that the prejudice of delaying the trial was so severe that it would "substantially impair [his] constitutional right to a fair trial." (Dkt. No. 148 at 3). The Government opposed Wrensford's Motion to Sever. (Dkt. No. 150).

The Court denied the Motion to Sever on September 15, 2014 on the grounds that "the preference for judicial economy is compelling, and weighs strongly against severance" and Wrensford had provided no specifics on the issue of prejudice. (Dkt. No. 153 at 5). The Court noted that both Defendants were indicted for the same crimes involving the same event, and the conduct of two separate trials "likely with the same witnesses testifying to the same events . . . runs counter to the established principles of judicial economy." *Id.* at 6.

On September 17, 2014, the Court granted Muller's Motion to Continue and scheduled the trial for January 7, 2015. (Dkt. No. 154). On September 19, 2014, the Government moved to continue the January 7 trial pursuant to 18 U.S.C. § 3161(h)(3)(A), representing that its DNA witness was unavailable for trial due to a medical condition which imposed restrictions on her ability to travel. (Dkt. No. 157). The Government requested that the Court continue the trial until

after March 6, 2015. *Id.* at 2. Counsel for the Government stated that he had contacted counsel for Defendants and that counsel for Wrensford objected to a continuance and counsel for Muller would not decide whether to object until he contacted his client. *Id.*

Based on the Government's request for a continuance pursuant to 18 U.S.C. § 3161(h)(3)(A), including its request that the trial be scheduled after March 6, 2015, the Court granted the Government's Motion on October 7 and issued a Trial Management Order scheduling the trial for Monday, March 9, 2015. (Dkt. No. 159). As of the date of the Court's October 7 Order—which was after the time period allowed by the Court's Local Rules for responses to motions—neither Wrensford nor Muller had filed an opposition to the Government's Motion, or otherwise articulated for the Court any grounds for an opposition.

On October 10, 2014, Wrensford filed a one and one-half page "Notice" in which he objected to the trial date of March 9, 2015 and asserted his "constitutional and statutory right to a speedy trial." (Dkt. No. 160). Muller joined in the Notice on October 15. (Dkt. No. 161). Because the import of  Wrensford's "Notice" was unclear, including whether he was seeking relief and, if so, the nature of such relief, the Court issued an Order on November 13, 2014 directing Wrensford and Muller to clarify their Notice. (Dkt. No. 164). Wrensford filed a "Notice of Clarification" on November 24, 2014, in which he discussed his Speedy Trial Act and Sixth Amendment speedy trial rights, and questioned the Government's position that its outstanding motion *in limine* tolled the speedy trial clock—although he stated that he was only "giv[ing] the government and the court notice of his assertion of his Speedy Trial rights without asking for relief." (Dkt. No. 167 at 5). The Government filed a response on December 16, 2014. (Dkt. No. 176).

While the foregoing matters related to the scheduling of the trial were proceeding, one other motion was filed and pending. On September 23, 2014, Muller filed an *Ex Parte* Motion (Dkt. No. 158), which the Court adjudicated on December 24, 2014. (Dkt. Nos. 180, 181).

On January 9, 2015, Wrensford filed the instant Motion to Dismiss in which he raised statutory (Speedy Trial Act) and constitutional (Sixth Amendment) speedy trial arguments. (Dkt. No. 183). Muller filed a Notice on January 23, 2015 indicating his joinder in Wrensford's Motion. (Dkt. No. 189). In the Motion, Wrensford argues that his statutory right to a speedy trial was violated by unreasonable delay: specifically, from October 8, 2014—the day after the Court granted the Government's Motion to Continue the January 2015 trial based upon the unavailability of its expert witness—through the January 9, 2015 filing of his Motion to Dismiss, a total of ninety-four days. (Dkt. No. 183 at 10). Wrensford further argues that the initial nine days "from the arraignment for the indictment (January 29, 2013) until the filing of the first motion (February 8, 2013)" must also be added to the ninety-four days, which together violate the seventy days allowed under the Speedy Trial Act. *Id.* In a footnote, Wrensford "notes that additional time could be counted for the amount of time exceeding 30 days that motions were taken under advisement," but provides no specifics on dates that he considers non-excludable. *Id.* n.1. Finally, Wrensford claims that the Government's position that its outstanding Motion *in Limine* tolls the speedy trial clock until the eve of trial is unreasonable. *Id.* at 9.

As to his Sixth Amendment claim, Wrensford asserts that he has been prejudiced by the ongoing delay because he has been incarcerated since May 2012 and that the delay "has the potential to undermine the reliability of the trial for both sides" and "can lead to the erosion of exculpatory evidence and testimony as well as hinder [his] ability to defend himself." *Id.* at 16.

In this regard, Wrensford notes that the place where the incident took place—Ben's Car Wash—has been "shuttered and abandoned for a lengthy period of time." *Id.*

In its Opposition, the Government asserts that only three non-excludable days have expired because its Motion *in Limine* is still outstanding; it had requested a hearing on the Motion *in Limine* (on December 16, 2014) and hereby renewed its request; until that hearing—which need not be promptly held—was concluded and the Court disposed of the motion, the speedy trial clock remains tolled; and that exclusions applicable to Wrensford apply to Muller and vice versa. (Dkt. No. 190 at 8). The Government also asserts that "the vast majority of the delay" in bringing this case to trial was occasioned by Wrensford, who demonstrated no prejudice, nor should any be presumed; and that the applicable factors weigh against a finding that Wrensford's Sixth Amendment right to a speedy trial has been violated. *Id.* at 8-12.

## II.   DISCUSSION

### A.  The Speedy Trial Act

The Speedy Trial Act sets forth a basic rule:

> In any case in which a plea of not guilty is entered, the trial of a defendant . . . shall commence within seventy days from [the later of (1)] the filing date . . . of the information or indictment, or [(2)] the date the defendant has appeared before a judicial officer of the court in which such charge is pending.

18 U.S.C. § 3161(c)(1). The Speedy Trial Act recognizes that certain "periods of delay" are excludable from the seventy-day trial clock. 18 U.S.C. § 3161(h). The statute provides, in pertinent part:

> **(h)** The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> **(1)** Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

\* \* \*

> **(D)** delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

\* \* \*

> **(H)** delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

\* \* \*

> **(6)** A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

18 U.S.C. § 3161(h). In addition, "an exclusion applicable to one defendant applies to all co-defendants." *United States v. Claxton,* 766 F.3d 280, 292 (3d Cir. 2014) (internal quotation marks omitted); *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993).

If the defendant is not brought to trial within seventy days as specified in the Act, "the information or indictment shall be dismissed on motion of the defendant," 18 U.S.C. § 3162(a)(2), with or without prejudice. *United States v. McNeil*, 416 F. App'x 227, 229 (3d Cir. 2011). A defendant bears the burden of proving a Speedy Trial Act violation. 18 U.S.C. § 3162(a)(2).

Wrensford argues that the Speedy Trial Act has been violated warranting dismissal of the Indictment. In support of his argument, Wrensford counts nine non-excludable days between January 29, 2013 (which he incorrectly cites as the arraignment on the Indictment) and February 8, 2013 (the filing of the first motion), plus ninety-four non-excludable days from October 8, 2014 (the day after the Court continued the January 7, 2015 trial) through January 9, 2015 (the filing of Wrensford's Motion to Dismiss), and argues that the seventy-day Speedy Trial Act limit

has been exceeded. (Dkt. No. 183 at 10). Wrensford also notes in passing that additional days could be excluded based on the thirty-day time limit for motions taken under advisement. *Id*. at 10 n.1. The Court rejects these arguments for the following reasons.

First, while Wrensford begins counting the running of the Speedy Trial Act clock from the arraignment on the Indictment to the date of the filing of the first motion (Dkt. No. 183 at 10), he incorrectly starts from the date of the Indictment rather than from the date of arraignment. Wrensford and Muller were indicted on January 29, 2013 (Dkt. No. 1) and arraigned on February 5, 2013. (Dkt. No. 3). The first motion—the Government's Motion *in Limine*—was filed on February 8, 2013. The speedy trial clock began to run on the day after Wrensford's and Muller's initial appearance—February 6, 2013—until the day prior to the filing of the first motion, February 7, 2013. *United States v. Rashid*, __ F. App'x __, 2014 WL 6656177, at *3 (3d Cir. Nov. 25, 2014); *see also United States v. Hatchett,* 987 F. Supp. 2d 529, 537 n.4 (E.D. Pa. 2013); 18 U.S.C. § 3161(h)(1)(D). Accordingly, two—rather than nine—non-excludable days are counted between January 29, 2013 and February 8, 2013.

Second, in asserting that all of the days from October 8, 2014 through January 9, 2015 are non-excludable from the Speedy Trial Act calculation, Wrensford ignores certain salient facts that render the Speedy Trial Act tolled for that period.

Virtually all of the October 8, 2014 to January 9, 2015 time frame which Wrensford claims is non-excludable falls within the period encompassed by the Muller-initiated Motion to Continue the trial. The record in this case reflects that the Court's rescheduling of the October 6, 2014 trial date to January 7, 2015 was a direct result of Muller's Motion to Continue filed on September 4, 2014 (Dkt. No. 144), which then implicated the Court's unavailability in November, and the Thanksgiving and Christmas holidays which the parties—including both

Wrensford and Muller—rejected as viable options for this two-week trial. In his September 4, 2014 Motion to Continue, Muller asserted that his counsel was unavailable for the month of October due to scheduling conflicts with cases in the Superior Court of the Virgin Islands. (Dkt. No. 144).[3] The Court was unavailable from November 9-December 9, 2014. Counsel for Muller was unavailable during the last week of October 2014; thus, although the Court was available during the first week of November, that one-week period would not have been sufficient to try the case. Further, as the parties noted in their Joint Request, they did not want this two-week trial to be scheduled during the Thanksgiving or Christmas holidays because "jury appearance and enthusiasm would be severely reduced" during that time, which would "hamper a fair and just trial." (Dkt. No. 142 at 2). While the Court was available as of December 10, a two-week trial—even beginning on the first date the Court was available—would still have impacted the Christmas holidays. As a result, the Court scheduled the trial on the earliest viable date—January 7, 2015[4]—based on the availability of Muller's counsel, the Court's availability, and the Defendants' expressed preferences. This period of delay—from October 6, 2014 through January 6, 2015—which was precipitated by Muller due to his counsel's unavailability in October 2014,

---

[3] In his Motion to Sever, Wrensford expressed his desire to proceed with the October 6th trial date notwithstanding the unavailability of his co-Defendant's counsel. The Court denied the Motion to Sever on the grounds of judicial economy and Wrensford's failure to show prejudice. (Dkt. No. 153). The judicial economy rationale underlying the Court's denial of Wrensford's Motion to Sever is highlighted throughout the record in this case. In addition to the fact that both Defendants were indicted for the same crimes involving the same event, on several occasions Muller joined in Wrensford's motions or other filings—including Wrensford's *Daubert* Motion, his Motion to Suppress, and the instant Motion to Dismiss. *See, e.g.*, Dkt. Nos. 65, 66, 161, 189. Further, as recently as February 10, 2015, the connection between Wrensford and Muller was made manifest by Wrensford's filing of a Notice designating the same eyewitness identification expert previously designated by Muller (Dkt. No. 141) as his expert as well. (Dkt. No. 193). Thus, as the Court previously found, two separate trials "likely with the same witnesses testifying to the same events. . . runs counter to the established principles of judicial economy." (Dkt. No. 153 at 6).

[4] The Court notes that January 6—Three Kings Day—is a local holiday.

must also be attributed to Wrensford. *Arbelaez*, 7 F.3d at 347 ("[A]n exclusion applicable to one defendant applies to all codefendants.") (internal quotation marks omitted); *see also United States v. Dinzey*, 423 F. App'x 224, 226 (3d Cir. 2011) ("'The excludable delay of [the defendant's] co-defendants is ascribed to him.'") (quoting *United States v. Farmer*, 543 F.3d 363, 368 (7th Cir. 2008)) (finding that pending pretrial motions filed by co-defendants tolled time limitations of the Speedy Trial Act); *United States v. Mouzon,* 2014 WL 956972, at *3 (M.D. Pa. Mar. 12, 2014) ("When read together, the pretrial motions exclusion of Section 3161(h)(1)(D) and the co-defendant proceedings exclusion of Section 3161(h)(6) means that cases involving multiple defendants are governed by a single speedy trial clock and a delay attributable to any one defendant is charged against the single clock, thus making the delay applicable to all defendants.").[5]

Third, Wrensford included a footnote in his Motion to Dismiss stating that he "notes that additional time *could be* counted for the amount of time exceeding 30 days that motions were taken under advisement." (Dkt. No. 183 at 10 n.1) (emphasis added). Such a conditionally-phrased, passing reference—completely devoid of any specificity as to which days should not be excluded from the speedy trial calculation—is woefully inadequate to meet Wrensford's burden

---

[5] Wrensford appears to include January 9, 2015 as an excludable day. However, the day on which a motion is filed is excluded from the Speedy Trial Act clock. *Rashid*, 2014 WL 6656177, at *3. In addition, the remaining days—January 7 and 8, 2015—fall at the beginning of the period excludable by virtue of the unavailability of the Government's DNA expert. As represented by the Government in its September 19, 2014 Motion to Continue the January 7 trial, and as reflected in the Court's Order granting that Motion, the period from January 7, 2015 to March 9, 2015 is excludable pursuant to § 3161(h)(3) due to the unavailability of the Government's DNA witness. The DNA "witness is unquestionably important to the prosecution's case, and the government has a good faith belief that it will use that witness's testimony at trial." *United States v. Hamilton*, 46 F.3d 271, 277 (3d Cir. 1995); 18 U.S.C. § 3161(h)(3)(A). Moreover, the DNA expert witness is also "unavailable" pursuant to § 3161(h)(3)(B) because her presence for trial cannot be obtained by "due diligence" due to her medical condition. *See United States v. Faison*, 679 F.2d 292, 297 (3d Cir. 1982).

of proving a Speedy Trial Act violation under § 3162(a). *See Zedner v. United States*, 547 U.S. 489, 502-03 (2006) ("[Section] 3162(a)(2) assigns the role of spotting violations of the Act to defendants—for the obvious reason that they have the greatest incentive to perform this task."). "By placing the burden of identifying violations on the defendant, the [Speedy Trial] Act links the right to dismissal with the duty to draw the court's attention to erroneous exclusions of time." *United States v. O'Connor*, 656 F.3d 630, 638 (7th Cir. 2011); *see also United States v. Hamilton*, 46 F.3d 271, 275 (3d Cir. 1995) (opining that defendant "bears the burden of proof of supporting such [Speedy Trial Act] motion"). Indeed, the fact that Wrensford makes a statement about possible non-excludable days in a footnote, without any specifics, would be grounds for ignoring any such argument altogether. *See Taransky v. Sec'y of U.S. Dep't of HHS*, 760 F.3d 307, 321 n.12 (3d Cir. 2014) (noting that plaintiff raises argument in a footnote "which is another reason why we refuse to consider it on the merits" and quoting *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote) but not squarely argued, are considered waived.")); *United States v. Hicks*, 510 F. App'x 167, 173 n.8 (3d Cir. 2013) (refusing to examine on appeal the admissibility of evidence that criminal defendant did not specifically challenge, and citing *John Wyeth & Bro. Ltd.*, 119 F.3d at 1076 that found arguments raised in passing waived).

In any event, Wrensford's cryptic reference to a seemingly inflexible thirty-day period for matters taken under advisement does not account for the fact that, from September 2013 through August 2014, the Court was receiving briefing, holding hearings, reviewing and considering the various factual and legal issues presented, and issuing opinions on Defendants' multiple motions—Muller's Motion to Suppress and his *Ex Parte* Motion; and Wrensford's Motion to Suppress and his *Daubert* Motions in which Muller joined. As the record reflects, the

Court did not set hearings and adjudicate each motion seriatim, but addressed them in overlapping fashion. Thus, briefing, hearings, consideration of motions and the drafting and issuance of opinions were ongoing contemporaneously on multiple motions. Further, Wrensford's *Daubert* and suppression motions raised numerous issues that required extensive hearings and lengthy opinions (totaling 104 pages) to address. Muller's Motion to Suppress added another eleven pages of opinion, and his *Ex Parte* appeal resulted in an additional eleven-page opinion. The Third Circuit has recognized that "[t]he pendency of multiple pretrial motions provides another basis for excluding time from the speedy trial calculation." *Rashid,* 2014 WL 6656177, at *5 n.13 (citing *United States v. Felton*, 811 F.2d 190, 196-97 (3d Cir. 1987)); *cf. United States v. Baskin-Bey*, 45 F.3d 200, 204 (7th Cir. 1995) (opining that where a judge is "considering multiple pre-trial motions, the thirty-day [Speedy Trial Act] limit does not apply. Instead, a time period constituting 'reasonable promptness' is excluded, *i.e.*, some amount of time greater than thirty days."). Under the circumstances here, the Court therefore rejects the implication of Wrensford's footnote that any amount of days exceeding thirty days after a hearing is held or a motion is submitted, until the Court rules on the motion, must be counted against the speedy trial clock.

In addition to the reasonable flexibility afforded in the Speedy Trial Act calculation when multiple motions are pending, the overlapping nature of the time periods during which the motions were filed and pending can also affect—as here—the time that is deemed excludable. This further highlights the critical importance of specificity—noticeably absent from Wrensford's Motion—in advancing the thirty-day time limit argument, and provides further reason why Wrensford's argument in that regard must be rejected.

Wrensford's Motion to Suppress provides a prime example of the necessity to view motions in context. That Motion was filed on November 22, 2013, thus starting the tolling of the speedy trial clock as to that Motion. 18 U.S.C. § 3161(h)(1)(D).[6] The initial briefing on the Motion was completed with Wrensford's Reply on January 7, 2014. (Dkt. No. 72). An evidentiary hearing was held on January 17, 2014, and the Court ordered post-hearing briefing, which was completed on February 7, 2014. In his post-hearing brief, Wrensford raised a new suppression argument, challenging his identification as unnecessarily suggestive. This was, in effect, the equivalent of an additional motion to suppress, thus starting the tolling of a new speedy trial clock pursuant to § 3161(h)(1)(D) (tolling "from the filing of the motion through the conclusion of the hearing."); *see also Henderson v. United States*, 476 U.S. 321, 326 (1986) ("The plain terms of the statute appear to exclude all time between the filing of and the hearing on a motion whether that hearing was prompt or not."); *Rashid,* 2014 WL 6656177, at *3 (finding that fourteen-month period between filing of a motion and the hearing on the motion was excludable under the speedy trial clock). Indeed, Wrensford himself acknowledged that he was seeking relief different from, and in addition to, that initially asserted in his November 22, 2013 Motion by stating in his post-hearing brief: "In fairness, the government should have an opportunity to present evidence at a hearing if it so chooses since counsel is briefing this issue for the first time." (Dkt. No. 81 at 5 n.1). Not surprisingly, the Government sought to present additional evidence to address Wrenford's new request for relief. (Dkt. No. 85 at 6). The Court

---

[6] Muller's *Ex Parte* Motion and Motion to Suppress, filed in September and October 2013, respectively, had already started the tolling of the speedy trial clock as it relates to the series of motions filed by Muller and Wrensford.

reconvened the suppression hearing on June 26, 2014.[7] The Court then issued a forty-six page opinion on August 11, 2014 addressing all of the suppression issues raised by Wrensford. (Dkt. No. 138).[8] Thus, solely by virtue of Wrensford's Motion to Suppress, the entire period from November 22, 2013 through August 11, 2014—which encompasses the time period when other motions were being addressed and resolved—was tolled and is properly excludable pursuant to §§ 3161(h)(1)(D) and 3161(h)(1)H), and the authorities discussed above regarding the pendency of multiple motions.

Finally, Wrensford argues that the Government's outstanding Motion *in Limine* has not tolled the speedy trial clock, claiming that it is "unreasonable to conclude that a 2 year old motion in limine will continue to toll the Speedy Trial clock, *ad infinitum*." (Dkt. No. 183 at 9). Noting, *inter alia*, the Court's pre-trial practice evidencing its intent "to dispose of non-complex evidentiary matters on the eve of trial," *id.* at 8, Wrensford posits that "[t]here should be no tolling of the time where the pretrial motion does not affect the trial court's ability to proceed." *Id.* at 13.

Even if the Court were to assume the validity of Wrensford's *ad infinitum* argument in a context—as here—where the trial-related motions are typically resolved shortly before or during trial, this would not alter the Court's conclusion that Defendants have failed to establish that their rights under the Speedy Trial Act have been violated. Indeed, the two-year pendency of the

---

[7] Meanwhile, the Court had held a *Daubert* hearing on Wrensford's motion to exclude the Government's DNA expert on February 10, 2014; held another *Daubert* hearing on Wrensford's Motion to exclude the Government's firearm/toolmark expert on February 28; issued an opinion on Muller's Motion to Suppress on March 24; issued an opinion on Wrensford's motion to exclude the Government's DNA expert on March 25; and issued an opinion on Muller's *Ex Parte* Motion on May 2, 2014.

[8] The August 11 opinion was issued shortly after the Court's July 28, 2014 extensive opinion addressing Wrensford's motion to exclude the Government's toolmark expert. (Dkt. No. 136).

Government's Motion *in Limine* is not a factor in the Court's analysis set forth above. Nor have Defendants offered any legitimate basis for concluding, under the circumstances here, that ignoring the continued pendency of the Government's Motion *in Limine* would aid their argument that a violation of the Speedy Trial Act has occurred. Accordingly, Wrensford's Motion *in Limine* argument does not aid Defendants' cause.

For all of the foregoing reasons, the Court finds that Defendants have failed to establish that their rights to a speedy trial under the Speedy Trial Act have been violated.

**B.  Sixth Amendment Speedy Trial Rights**

Wrensford also argues that his Sixth Amendment rights to a speedy trial have been violated by the Government's delay in bringing him to trial. The Court finds that a Sixth Amendment violation has not been established.

In *Vermont v. Brillon*, 556 U.S. 81 (2009), the Supreme Court set the context for a Sixth Amendment speedy trial claim:

> The Sixth Amendment guarantees that in all criminal prosecutions, the accused shall enjoy the right to a speedy trial. The speedy-trial right is amorphous, slippery, and necessarily relative. It is consistent with delays and dependent upon circumstances. In *Barker [v. Wingo,* 407 U.S. 514 (1972)], the Court refused to quantify the right into a specified number of days or months or to hinge the right on a defendant's explicit request for a speedy trial. Rejecting such inflexible approaches, *Barker* established a balancing test, in which the conduct of both the prosecution and the defendant are weighed.

*Id.* at 89-90 (internal quotation marks, alterations, and citations omitted).

The balancing test established in *Barker* involves consideration of four factors. "The inquiry focuses on: (1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant is more to blame; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice suffered by the defendant." *United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014) (citing *Barker*, 407 U.S. at 530-31).

No single *Barker* factor is "'talismanic.'" *Id.* (quoting *Hakeem v. Beyer*, 990 F.2d 750, 770 (3d Cir. 1993)). Delays tolerated for an "ordinary street crime" would be considerably less than for serious, complex crimes. *Barker*, 407 U.S. at 531.

As discussed below, based on a balancing of the applicable factors, the Court finds that the balance weighs in favor of the Government.

### 1. Length of the Delay

The Third Circuit, in *Claxton*, set forth the context in which courts should consider the "length of the delay" *Barker* factor:

> The threshold question under *Barker* is whether the length of delay was sufficient to trigger analysis of the remaining factors. This involves a double enquiry. In other words, a court first decides whether the delay is long enough that it should trigger analysis of the other *Barker* factors. If it is, the length of the delay is also separately weighed in the court's analysis of the remaining factors. The length of the delay is measured from the date of arrest or indictment, whichever is earlier, until the start of trial. We have previously held that a delay of even fourteen months is sufficient to trigger review of the remaining *Barker* factors.

*Claxton,* 766 F.3d at 294 (internal quotation marks, alterations, and citations omitted). "[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31.

The Government concedes that the amount of time that elapsed since Wrensford and Muller were indicted until the start of trial, scheduled for March 9, 2015 (approximately twenty-five months) is sufficient to trigger an analysis of the other *Barker* factors. *Claxton*, 766 F.3d at 294. The Court agrees that a *Barker* analysis must be conducted. However, consistent with Wrensford's contention (Dkt. No. 167 at 9), the Court finds that the length of the delay that should be taken into account for purposes of the Sixth Amendment analysis must be measured from the date of arrest—albeit on federal charges (June 14, 2012)—not the date of the later

Indictment (January 29, 2013), for a total of thirty-three months. *See United States v. Mensah-Yawson,* 489 F. App'x 606, 611 n.9 (3d Cir. 2012) (assessing Sixth Amendment speedy trial claim and finding that period of delay ran from filing of federal charges, not state charges); *Hakeem*, 990 F.2d at 760 (Sixth Amendment delay measured from date of formal accusation—earliest date of arrest—until commencement of trial). Here, the length of the delay factor both triggers a *Barker* analysis and weighs in favor of Defendants.

### 2.  Reason for the Delay

With regard to the "reason for the delay" *Barker* factor, the Government

> bears the burden of justifying the delay in bringing a defendant to trial. In evaluating this factor, we subtract the amount of the delay caused by the defendant from the delay caused by the Government. In [*United States v.*] *Battis*, [589 F.3d 673 (3d Cir. 2009)], we set forth the three categories of delay and the resulting weight each carries against the government: (1) A deliberate effort by the Government to delay the trial in order to hamper the defense weighs heavily against the government; (2) A more neutral reason such as negligence or overcrowded courts also weighs against the Government, although less heavily; and (3) a valid reason, such as a missing witness, should serve to justify appropriate delay. By contrast, delay caused by the defense weighs against the defendant.

*Claxton*, 766 F.3d at 294-95 (internal quotation marks and citations omitted). This factor is geared to ferret out the existence of "prolonged and unjustifiable delays in prosecution" and whether "government inaction" caused the delay—either purposeful or negligent. *Velazquez*, 749 F.3d at 175, 179 (internal quotation marks omitted).

Wrensford does not address this *Barker* factor in his Motion to Dismiss, although he refers back to his earlier Notice of Clarification. There, Wrensford asserted that he "makes no argument that the government has made a deliberate attempt to hamper the defense." (Dkt. No. 167 at 10). He noted, however, that although he moved "for several continuances during the first year of this prosecution," that fact "should not carry much significance [due] to the fact that [he]

has not initiated any pretrial litigation since February of 2014," and delays since then "have been caused by a combination of the unavailability of co-defendant's counsel, the unavailability of a government witness and scheduling with the court." *Id.* He added that he "has remained available for trial since October, 2014" but that the Court scheduled a trial over 150 days later. *Id.* at 11.

The Government, on the other hand, claims that "Wrensford contributed in major part to the delay of his trial." (Dkt. No. 190 at 1). The Government points to Wrensford's Motions to Continue, filed in March, April, and August 2013, and the time it took for the Court to hold hearings on Wrensford's Motion to Suppress, concluded in June 2014, and to dispose of the motion in August 2014—amounting to a seventeen-month delay "occasioned by Wrensford's doings" which "gave Wrensford time to prepare and file motions and gave the court time to dispose of them." *Id.* at 10. The Government also cites the three-month delay from October 2014 to January 2015 which was caused by Muller, who sought a continuance of the October 2014 trial date. (Dkt. No. 144). According to the Government's calculations, twenty months of the twenty-five month delay—from March 2013 to August 2014, and October 2014 to January 2015—must be attributed to the actions of Wrensford and Muller. (Dkt. No. 190 at 11).

As noted above, the Court finds that the delay in this case was thirty-three months—starting from June 14, 2012—rather than twenty-five months. Nonetheless, the Court also finds that the greater part of the delay was caused by Wrensford and Muller, and that this factor therefore weighs against their Sixth Amendment speedy trial claim.

While Wrensford attempts to minimize the significance of his motions for continuances, it is undisputed that he filed a total of four motions to continue the trial (starting with the Information) during the course of these proceedings. On January 16, 2013, Wrensford filed a motion to continue the January 28, 2013 trial to March 25, 2013. (Dkt. No. 63 in 12-cr-12). On

March 12, 2013, Wrensford moved to continue the March 25th trial date. (Dkt. No. 10). On April 18, 2013, both Wrensford and Muller moved to continue the April 29, 2013 trial date. (Dkt. Nos. 22, 23). Finally, on August 12, 2013, Wrensford moved to continue the September 16, 2013 trial date (Dkt. No. 31), which resulted in the trial being scheduled for January 21, 2014. Contrary to Wrensford's urgings, the Court *does* find the four continuances he requested—which caused a delay of the trial from January 2013 to January 2014—significant. In a case involving a thirty-three month delay, to have over one-third of that delay attributed solely to Defendants' multiple requests for continuances plays an important part in the Court's assessment of this *Barker* factor.

Wrensford also attempts to downplay the role in the delay caused by his and Muller's filing of several substantive motions by noting that he has not initiated any pretrial litigation since February 2014.[9] Defendants began filing motions near the end of the year of the Defendant-initiated continuances.[10] In considering the issue of delay, it cannot be ignored that this group of substantive motions—which occupied the Court's attention during the period between the first filing in September 2013 and the issuance of the Court's final opinion in August 2014—was filed by Muller and Wrensford between fifteen and seventeen months *after* Defendants' June 2012 arrest.  In other words, Defendants did not commence the filing of their substantive pretrial motions until approximately half of the total period of delay in this matter had passed. While the Court does not take issue with the amount of time deemed necessary by

---

[9] Wrensford's statement in that regard is not accurate because he filed a Motion to Sever in September 2014. In addition, Wrensford's co-Defendant, Muller, filed a Motion to Continue the October 2014 trial date and an *Ex Parte* Motion in September 2014.

[10] As noted earlier, Muller filed a Motion to Suppress in September 2013 and an *Ex Parte* Motion in October 2013, the latter of which was adjudicated by the Magistrate Judge and appealed to the District Court. In November 2013, Wrensford filed a motion for a *Daubert* hearing and a Motion to Suppress, both of which were joined by Muller.

counsel to properly investigate the case and prepare for the filing of motions, the delay occasioned thereby cannot be disregarded.

Further, as Wrensford himself predicted in his fourth motion to continue the trial, filed on August 12, 2013, and as the 126 pages of Court opinion confirms, the motions were not run-of-the-mill motions, but rather contained significant issues. (Dkt. No. 31). As discussed above, a portion of the delay in the Court's adjudication of the motions was caused by the fact that Wrensford raised a new suppression issue in his February 2014 post-hearing brief—filed two and one-half months after his November 22, 2013 suppression motion. By Wrensford's own acknowledgment, this required the Court—"in fairness"—to reconvene the suppression hearing to allow the Government to present evidence on the new issue. (Dkt. No. 81 at 5 n.1). The renewed hearing took place in June 2014. The fact that the hearing had to be reconvened is attributed solely to Wrensford's evolving arguments.[11]

In *United States v. Loud Hawk*, 474 U.S. 302 (1986), the Supreme Court commented approvingly on a circuit court opinion concerning a district court's consideration of pretrial motions filed by defendants who then make Sixth Amendment speedy trial arguments: "'Having sought the aid of the judicial process and realizing the deliberateness that a court employs in reaching a decision, the defendants are not now able to criticize the very process which they so frequently called upon.'" *Id.* at 316-17 (quoting *United States v. Auerbach*, 420 F.2d 921, 924 (5th Cir. 1969)). This position has been echoed in subsequent circuit court decisions. *See, e.g., United States v. Young*, 657 F.3d 408, 415 (6th Cir. 2011); *United States v. Ailemen*, 43 F. App'x

---

[11] During the time period between September 2013 and August 2014, the Government filed one Motion to Continue. It requested that the date for the February 12, 2014 *Daubert* hearing be changed due to the fact that its firearm/toolmark expert was not expected to return to the Virgin Islands until February 16. (Dkt. No. 86). Counsel for Wrensford did not object to the continuance, *id.* and the hearing was re-scheduled for February 28, 2014—a two-week delay. Witness unavailability is a "valid reason" justifying a delay. *Claxton*, 766 F.3d at 295.

77, 81 (9th Cir. 2002); *United States v. Tranakos*, 911 F.2d 1422, 1428 (10th Cir. 1990); *see also United States v. Souza*, 749 F.3d 74, 82 (1st Cir. 2014) (exploring *Barker* factors and noting that defendant "filed two pretrial motions, which further delayed the proceedings"); *United States v. Howard*, 443 F. App'x 596, 599 (2d Cir. 2011) (charging defendant with "significant portion of the delay" in his trial as attributable to "his own pretrial motions"). This reasoning is equally apt here. Thus, the time period from January 21, 2014 (the trial date resulting from the last of Wrensford's trial continuances) to August 11, 2014 (the date of the Court's last Opinion on Defendants' major pretrial motions) is attributable to Defendants.[12] *See Claxton*, 766 F.3d at 295 (finding that delay caused by defendant and his co-defendants, as a result of their filing myriad motions and appeals, was counted against defendant in assessing reason for the delay factor)

As noted earlier, following the issuance of the Court's August 11, 2014 Opinion, efforts were focused on attempting to set a trial date. After the Court set a trial date for October 6, Muller moved on September 4, 2014 to continue that trial date, which in turn prompted Wrensford to file his Motion to Sever.[13] As a result of Muller's Motion to Continue, the trial was rescheduled for January 2015. The three month October-January delay, although caused by Muller, also counts against Wrensford. *See id.*; *United States v. Green*, 516 F. App'x 113, 124 (3d Cir. 2013) ("Delay caused by a defendant's counsel is charged against the defendant.").

After the trial was set for January 2015, the Government filed a Motion to Continue, based on the unavailability of its DNA expert witness. The Court granted the Motion,

---

[12] Similarly, from Defendants' June 14, 2012 arrest through December 4, 2012, the Government's detention motion, the Defendants' appeal of the Magistrate Judge's decision on that motion, and Wrensford's Motion to Dismiss were briefed and adjudicated. (Dkt. Nos. 56, 57 in 12-cr-12). For the same reasons discussed above, this time period is also counted against Defendants.

[13] Muller also filed an *Ex Parte* Motion in September 2014. As a result, the September delay is attributable to Defendants.

rescheduling the trial date for March 2015. While the January-March 2015 trial delay is clearly attributable to the Government, that delay was justified by "a valid reason"—a witness who was unavailable due to a medical condition. *Claxton,* 766 F.3d at 295. This two-month delay, while weighing against the Government, is justified. *Barker*, 407 U.S. at 531; *see also United States v. Alvin,* 30 F. Supp. 3d 323, 345 (E.D. Pa. 2014) (finding that unavailability of essential witness justifies a delay pursuant to reason for delay *Barker* factor).

Accordingly, of the thirty-three month delay from the time of Wrensford's arrest until trial, the Government is responsible for a two-week continuance related to the scheduling of a *Daubert* hearing and a two-month delay in the trial date. Even so, both of the continuances relate to the unavailability of the Government's witnesses—a valid reason justifying the delay. *Claxton*, 766 F.3d at 295. On the other hand, the Defendants are responsible for approximately thirty months of the delay (six months from June-December 2012 adjudicating each Defendant's appeals of their detention orders and Wrensford's Motion to Dismiss; twelve months of trial continuances; eight months while hearings were held and the Court was adjudicating Defendants' motions; one month resulting from the September filing of Muller's Motion to Continue and *Ex Parte* Motion; and three months resulting from Muller's October 2014-January 2015 trial continuance). As a result, the Court finds that this *Barker* factor weighs in favor of the Government.

### 3.   Assertion of  Speedy Trial Rights

The third factor in the *Barker* analysis "is the degree to which the defendant asserts his speedy trial right, 'including the frequency and force' of such assertions." *Claxton,* 766 F.3d at 296 (quoting *Velazquez*, 749 F.3d at 183). When a defendant "vigorously pursued a speedy trial," *Hakeem*, 990 F.2d at 764 (internal quotation marks omitted), that fact "is entitled to strong

evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. "To demonstrate a convincing assertion of the right, the defendant must show a motion or evidence of a direct instruction to counsel to assert the right at a time when it would have had some chance of success." *Green*, 516 F. App'x at 124-25.

Wrensford requested a speedy trial at his arraignment on the Information on June 18, 2012 and on the Indictment on February 5, 2013. (Dkt. No. 14 in 12-cr-12; Dkt. No. 3 in 13-cr-3). He next invoked his constitutional right to a speedy trial in his Motion to Sever, filed in September 2014. (Dkt. No. 148). He mentioned his statutory and constitutional rights to a speedy trial in his "Notice of Objection to March 2015 Trial Date" filed on October 10, 2014 (Dkt. No. 160), and expanded on it in his November 24, 2014 Notice of Clarification. (Dkt. No. 167). He then filed his Motion to Dismiss on speedy trial grounds on January 9, 2015. (Dkt. No. 183).

The Court finds that this *Barker* factor weighs in favor of Wrensford and Muller. Wrensford's Motion to Sever and his Notice of Objection "articulated a concern about the time it was taking for him to go to trial," although these references were in passing rather than substantive, *Mensah-Yawson*, 489 F. App'x at 611, and thus their "force" was muted. In the subsequent Clarification of his Notice, filed on November 24, 2014 in response to a Court Order, Wrensford more forcefully expounded on his constitutional and statutory rights to a speedy trial. The Clarification was the forerunner to the instant Motion to Dismiss, as it raised many of the same issues and arguments. (Dkt. No. 167). Taken together, Wrensford's mention of speedy trial issues in his Motion to Sever and Notice, and his more fulsome explanation in his Clarification, weigh in favor of Wrensford and Muller on this *Barker* factor.

### 4.  Prejudice Suffered by the Defendant

The final *Barker* factor is the prejudice suffered by the Defendant. This factor is assessed

in light of the interests of defendants which the speedy trial right was designed to
protect. Th[e Supreme] Court has identified three such interests: (i) to prevent
oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the
accused; and (iii) to limit the possibility that the defense will be impaired.

*Barker*, 407 U.S. at 532; *see also Doggett v. United States*, 505 U.S. 647, 654 (1992). Excessive

delay "can lead to a presumption of prejudice, but . . . 'such presumptive prejudice cannot alone

carry a Sixth Amendment claim without regard to the other *Barker* criteria . . . it is part of the

mix of relevant facts, and its importance increases with the length of delay.'" *Claxton*, 766 F.3d

at 296 (quoting *Doggett*, 505 U.S. at 655-56). Prejudice is "[t]he most important factor" in the

*Barker* analysis. *Hakeem*, 990 F.2d at 760. "[T]he burden of showing prejudice lies with the

individual claiming the violation and '[the] possibility of prejudice is not sufficient to support the

position that . . . speedy trial rights [are being] violated.'" *Id.* (quoting *Loud Hawk*, 474 U.S. at

315).

Wrensford makes a general assertion that the "ongoing delay *has the potential* to

undermine the reliability of the trial for both sides" as it "*can lead* to the erosion of exculpatory

evidence and testimony as well as hinder Mr. Wrensford's ability to defend himself." (Dkt. No.

183 at 16) (emphasis added). However, this assertion falls short of the burden Defendants must

shoulder on this *Barker* factor because the mere "possibility of prejudice" does not support the

position that a defendant's speedy trial rights are being violated. *Hakeem,* 990 F.2d at 760.

Wrensford also points to the business where the incident took place being "shuttered and

abandoned," ostensibly to show an impairment to his defense. (Dkt. No. 183 at 16). An impaired

defense is the most serious of the three types of prejudice mentioned in *Barker*, as "the inability

of a defendant to prepare his case can disturb the fairness of the legal system as a whole." *United*

*States v. Colon*, 2008 WL 1777385, at *8 (D.V.I. Apr. 16, 2008) (citing *Barker*, 407 U.S. at 532)). However, Wrensford does not explain how the shuttering or abandonment of the business where some of the events on the day of the shooting is alleged to have occurred affects his defense, let alone impairs it or otherwise adversely impacts his ability to prepare his case. *See United States v. Villalobos*, 560 F. App'x 122, 127-28 (3d Cir. 2014); *Colon*, 2008 WL 1777385, at *9. The closure of a business, without more, does not equate, for example, to the death or disappearance of a witness that the *Barker* Court found could be prejudicial. *Barker*, 407 U.S. at 532.

Even if the Court were to consider Wrensford's passing reference to the length of his incarceration (since May 2012) as a vestigial argument of presumptive prejudice, this argument would fail as well. In *Doggett*, the Supreme Court said that "time can tilt the case against either side[.] . . . [E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett,* 505 U.S. at 656. In *Doggett*, the Supreme Court considered both the total length of delay—there, eight years—and the portion of the delay attributable to the Government—six years—as warranting a presumption of prejudice. *Doggett*, 505 U.S. at 657-58. Subsequently, in *Battis*, the Third Circuit found that where there was "a forty-five month delay in bringing a defendant to trial, even when it could be argued that only thirty-five months of that delay is attributable to the Government," prejudice would be presumed. *Battis*, 589 F.3d at 683. Unlike those cases, while there was a thirty-three month delay in this case, only two-plus months are attributable to the Government, and that delay was justified. That is a significant enough difference to find that *Doggett's* and *Battis'* findings of presumptive prejudice are inapt here.

In sum, Wrensford "has provided the [C]ourt with nothing more than unsubstantiated claims of prejudice." *Colon,* 2008 WL 1777385 at *10. Having failed to establish any prejudice to his defense resulting from the pre-trial delay, the Court finds that this *Barker* factor weighs in favor of the Government.

**5.  Weighing the *Barker* Factors**

The thirty-three month "length of delay" factor between arrest and the scheduled trial warrants a speedy trial inquiry under the Sixth Amendment, and weighs in Defendants' favor, and the assertion of his speedy trial rights weighs in Defendants' favor as well. On the other hand, the reason for the delay and prejudice factors weigh in the Government's favor. Because virtually all of the delay is attributable to Defendants and, on the most important *Barker* factor— prejudice—Defendants have failed to make a showing, the balance weighs in the Government's favor. Accordingly, the Court finds that Defendants' Sixth Amendment rights to a speedy trial have not been violated.

Accordingly, the Court will deny Wrensford's Motion to Dismiss the Indictment against him on Sixth Amendment grounds.

**III.     CONCLUSION**

For the reasons set forth above, the Court will deny Wrensford's Motion to Dismiss (Dkt. No. 183), on Speedy Trial Act and Sixth Amendment grounds, which was joined by Defendant Muller. (Dkt. No. 189).  An appropriate Order accompanies this Memorandum Opinion.

Date: February 26, 2015                                           _____/s/_____
                                                                                  WILMA A. LEWIS
                                                                                  Chief Judge