DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and<br>PEOPLE OF THE VIRGIN ISLANDS,<br><br>v.<br><br>ELVIN WRENSFORD and<br>CRAIG MULLER,<br><br>                    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Criminal Action No. 2013-0003 |

**Attorneys:**
**Alphonso G. Andrews, Jr., Esq.,**
**Rhonda Williams-Henry, Esq.,**
St. Croix, U.S.V.I.
    *For the Government*

**Omodare B. Jupiter, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Elvin Wrensford*

**Martial A. Webster, Sr., Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Craig Muller*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Reconsideration of Contempt of Court," filed on December 30, 2014 by the United States of America (the "Government"). (Dkt. No. 182). In its Motion for Reconsideration, the Government asks the Court to reconsider its Order, issued pursuant to its inherent power, which required Assistant U.S. Attorney Alphonso G. Andrews, Jr. to pay $200.00 to the Clerk of Court as a sanction for his failure to timely respond to two Court Orders. (Dkt. No. 177). Because the Government's arguments are premised on the erroneous assumption that the sanction was grounded in a finding of criminal

contempt, and because the sanction was properly imposed pursuant to the Court's inherent powers, the Court will deny the Government's Motion.

## I. BACKGROUND

This matter has its genesis in a "Notice of Objection" filed by Defendant Elvin Wrensford on October 10, 2014 (Dkt. No. 160), and joined by Defendant Craig Muller on October 15, 2014. (Dkt. No. 161).[1] In the two-page Notice, Wrensford opposed the scheduled trial date of March 15, 2014, and asserted his constitutional and statutory rights to a speedy trial. Because the import of Defendant Wrensford's "Notice" was unclear to the Court, including whether he was seeking relief and, if so, the nature of such relief, the Court issued an Order on November 13, 2014 directing Defendants Wrensford and Muller to clarify their "Notice." (Dkt. No. 164). The Order provided that: (1) "Defendants Wrensford and Muller shall have up to and including **November 24, 2014** within which to file appropriate motions with the Court, or otherwise clarify their 'Notice' by explaining its significance with citation to the applicable legal authority that supports the filing"; (2) "the Government shall have up to and including **December 8, 2014** within which to file its Response"; and (3) "Defendants shall have up to and including **December 15, 2014** within which to file any Replies." *Id.*

On November 24, 2014, Defendant Wrensford filed a sixteen-page "Notice of Clarification" in accordance with the deadline set by the Court. (Dkt. No. 167). The Government failed to file a Response by the December 8, 2014 Court-ordered deadline. Nor did the

---

[1] Defendant Craig Muller filed a "Notice of Joinder in Defendant Elvin Wrensford's Notice (Doc. No. 160)," which stated in its entirety: "Comes now the Defendant, Craig Muller, by and through his undersigned counsel, Martial A. Webster, Sr., Esq., and respectfully joins in Defendant Elvin Wrensford's Notice (doc. No. 160) as it pertains to defendant Craig Muller." (Dkt. No. 161).

2

Government file a motion for extension of time within which to file its Response. To address the Government's failure, the Court issued an Order on December 12, 2015 which provided:

> The original date for the Government's Response to the Defendant's [167] "Notice of Clarification," as provided in the Court's [164] Order dated November 13, 2014 having passed, it is hereby ORDERED that the Government shall respond to the [167] Notice of Clarification by Monday, December 15, 2014 at 5:00 p.m.

(Dkt. No. 171). Again, the Government failed to file either a Response or a motion for an extension of time within which to respond by December 15, 2014—the second Court-ordered deadline.

Having received no word from the Government by noon the following day, at 12:08 p.m. on December 16, 2014, the Court issued an Order to Show Cause, directing the Government to file a submission with the Court by 2:00 p.m. to

> show cause as to why the Court should not exercise its inherent power to impose a monetary penalty on counsel as a sanction for their repeated failures to comply with the Court-ordered deadlines noted herein. *See Goldstein v. Forbes [(In re Cendant Corp.)]*, 260 F.3d 183, 199 (3d Cir. 2001); *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 566 (3d Cir. 1985).

(Dkt. No. 174). The Court also set a hearing on the Order to Show Cause for 3:00 p.m. on that same day. *Id.*

At 1:58 p.m. on December 16, the Government filed its Response to the Order to Show Cause (Dkt. No. 175), together with its Response to Wrensford's Notice of Clarification. (Dkt. No. 176). In responding to the Order to Show Cause, the Government stated that it interpreted the language in the Court's November 13, 2014 Order—that "the Government shall have up to and including December 8, 2014 within which to file its Response"—as permissive, not mandatory. *Id.* The Government added that since Defendant Wrensford did not request any relief in his Notice, "the Government saw no need to file a response and opted not to do so." *Id.* The

3

Response further explained that Attorney Andrews "noticed the Court's order requiring the Government to file a response to defendant Wrensford's clarification by December 15, 2014," but he misread the Order, "was under the impression that its response was due on Tuesday December 16th," and intended to file a response on that date. *Id.* The Government indicated that it "did [not] intend to, nor did it consciously, ignore the Court's Order." *Id.*

At the hearing on the Order to Show Cause, Attorney Andrews reiterated the position set forth in the Government's written Response. He further stated, *inter alia*, that, around 6:00 a.m. on December 16, he realized that, pursuant to the Court's December 12 Order, the Government's Response had been due the previous day. In response to the Court's questioning regarding his choice to do nothing upon making this discovery, Attorney Andrews explained that he was occupied with other matters and had intended to request permission to file the Response out of time later that day. (Dkt. No. 187 at 15).[2] Unable to explain how the Court was expected to know his intentions—in the absence of some immediate explanatory filing, and especially after already missing two deadlines—Attorney Andrews stated that, if the Court was suggesting that he should have

> simply stop[ped] everything that I was doing or intended to get done then, and file it, then that's true, I could have done that, Judge. But in my way of thinking, you're already late. You already missed the deadline. If it's a violation of the Court's order, it already is. But I knew it would be filed today. That's what I intended to do.

*Id.* at 18. Attorney Andrews stated that he had no intent to ignore or violate the Court's Orders. *Id.* at 25.

The Court expressed its concern:

---

[2] Attorney Andrews stated he was "in the process of preparing motions actually for three, three related Third Circuit appeals today, actually, today and yesterday." (Dkt. No. 187 at 15).

4

> The concern that I have with that, Attorney Andrews, is that by then, you knew the Court was thinking [that the] Government has already missed one deadline, now the Government obviously has missed a second, and you just decided, well, I'll file it later today. You could have filed a motion for extension and said, mea culpa, Court, I missed the deadline. I'll file what you need later in the day. Nothing came in. And I don't know under those circumstances how you could expect the Court to think anything else other than the Government has missed this deadline as well. That, to me, reflects a careless, lackadaisical attitude, because it has no thought whatsoever for what the Court might be thinking, particularly under the circumstances here where you knew the Court was thinking you had already missed one deadline. That I have a concern about. And it has nothing to do with intent, but it has everything to do with the amount of care and attention that the Government and that you as an attorney representing the Government [are] paying to the Court's Orders and the Court's expectations.

*Id.* at 29-30.

Finding Attorney Andrews' responses unacceptable and his failures inexcusable, the Court stated at the conclusion of the Show Cause hearing that "pursuant to the inherent powers of the Court to control its docket, to manage the business before it, I'm going to fine you $200." *Id.* at 31. A written Order to that effect was issued the same day. (Dkt. No. 177).

On December 30, 2014, the Government filed the instant "Motion for Reconsideration of Contempt of Court" (the "Motion"). (Dkt. No. 182). The Motion states that the Government is seeking relief pursuant to Rule 7.3(3) of the Local Rules of Civil Procedure based on "the need to correct clear error or prevent manifest injustice." *Id.* ¶ 10. The Government's argument for reconsideration is premised on its "assum[ption] that the Court proceeded under 18 U.S.C. § 401," the criminal contempt statute, pursuant to which it "imposed a punitive sanction—a monetary penalty paid to the Court—and not a sanction to coerce compliance with a court order or to compensate an injured party." *Id.* ¶ 12. Because criminal contempt is governed by Fed. R. Crim. P. 42, which provides for two types of contempt proceedings, and the Court did not follow either procedure, the Government concluded that the Court could not lawfully find Government counsel in contempt under either Rule 42(a) or (b). *Id.* ¶ 14.

5

The Government's assumption that the Court has imposed a criminal contempt sanction—rather than a lesser sanction pursuant to the Court's inherent power—is erroneous and fatally infects the Government's entire analysis.[3] Accordingly, the Motion for Reconsideration will be denied.

## II. DISCUSSION

### A. Legal Principles

Because the Government's Motion for Reconsideration is premised on the erroneous assumption that the sanction imposed here was one for criminal contempt, an understanding of the distinction between a sanction grounded in a finding of criminal contempt and one—as here—grounded in the inherent powers of the Court is important. To this end, the Court turns to a discussion of legal principles.

#### 1. Motion for Reconsideration

A motion for reconsideration must be based on one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not [previously] available. . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *see also* LRCi 7.3. Reconsideration "is an extraordinary remedy and should be

---

[3] The Government has noted that the Court's imposition of this sanction could have collateral professional consequences for counsel beyond the payment of the fine, pursuant to U.S. Attorney's Manual 1-4.120B (reporting to Department of Justice judicial findings of misconduct against an Assistant U.S. Attorney). (Dkt. No. 183 at 3 n.2). The Court has no intent or desire to subject Attorney Andrews to consequences beyond payment of the fine imposed, but the Court has no control over collateral consequences imposed by the Department of Justice. However, to the extent that the collateral consequences flow from a finding of criminal contempt rather than from a sanction imposed pursuant to the inherent powers of the Court, this Memorandum Opinion corrects the Government's erroneous premise.

granted sparingly." *Boldrini v. Wilson*, 2013 WL 619774, at *1 (M.D. Pa. Feb. 19, 2013) (citing *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999)).

The Government is relying on the third reconsideration factor as grounds for its Motion—the need to correct clear error or manifest injustice. In order for the Court to grant such relief, the Government must show that "the Court overlooked some dispositive factual or legal matter that was presented to it.'" *Greene v. V.I. Water & Power Auth.*, 2012 WL 4755061, at *2 (D.V.I. Oct. 5, 2012) (quoting *In re Rose,* 2007 U.S. Dist. LEXIS 64622, at *3 (D.N.J. Aug. 30, 2007)).

### 2. Criminal Contempt

The Government argues that the Court did not follow the dictates of 18 U.S.C. § 401, the statute governing criminal contempt, or Fed. R. Crim. P. 42(a) or (b), the Federal Rules governing criminal contempt, when it imposed its $200.00 sanction on Attorney Andrews.

A court's power to impose penalties for criminal contempt derives from 18 U.S.C. § 401, which provides, in relevant part:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority. . . as—
>
> * * *
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401(3).

Criminal contempt is a punitive sanction, "designed to vindicate the court's authority by punishing past acts of disobedience and therefore cannot be cured by the contemnor." *United States v. Juror Number One*, 866 F. Supp. 2d 442, 446 (E.D. Pa. 2011) (citing *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 631-32 (1988)). Criminal contempt proceedings are "'separate

from the actions which spawned them.'" *Id.* (quoting *Latrobe Steel Co. v. United Steelworkers of Am., AFL-CIO*, 545 F.2d 1336, 1343 (3d Cir. 1976)). To sustain a finding of criminal contempt under 18 U.S.C. §401(3), it must be shown that "the alleged contemnor willfully disobeyed an order by the court beyond a reasonable doubt. The mere failure to comply with a court's order, without more, is not sufficient to sustain a conviction for contempt because 'the crime of criminal contempt requires a specific intent to consciously disregard an order of the court.'" *Juror Number One*, 866 F. Supp. 2d at 448 (quoting *Waste Conversion, Inc. v. Rollins Environmental Servs. (NJ), Inc*., 893 F.2d 605, 610 (3d Cir. 1990)). "The element of willfulness . . . is an essential component of the crime . . . [It] does not exist where there is a '[g]ood faith pursuit of a plausible though mistaken alternative.'" *Waste Conversion,* 893 F.2d at 609 (quoting *United States v. Greyhound Corp.,* 508 F.2d 529, 532 (7th Cir. 1974)).

Fed. R. Crim. P. 42 governs criminal contempt proceedings. Rule 42(a) provides that "[a]ny person who commits criminal contempt may be punished for that contempt after prosecution on notice." Rule 42(a)(1) describes what the notice must contain; Rule 42(a)(2) indicates who the court must appoint as a prosecutor; and Rule 43(a)(3) provides, *inter alia*, that a person prosecuted for criminal contempt is entitled to a jury trial if federal law allows. Rule 42(b) describes the procedure for a court summarily punishing a person who commits criminal contempt in the court's presence.

### 3. Inherent Powers of the Court

Not all fines assessed by the Court against an attorney for not timely responding to Court Orders constitute criminal contempt. Third Circuit jurisprudence has long established that there is a significant difference between a court sanctioning an attorney for criminal contempt and

sanctioning an attorney pursuant to its inherent powers for acts that do not rise to the level of contempt.

In *Eash v. Riggins Trucking Inc.*, 757 F.2d 557 (3d Cir. 1985), the Third Circuit, sitting en banc, exhaustively examined this issue.[4] It first discussed three areas in which the "inherent power of the court" had historically been employed. The first, termed "irreducible inherent authority," involved "activity so fundamental to the essence of a court as a constitutional tribunal that to divest the court of absolute command within this sphere is really to render practically meaningless the terms 'court' and 'judicial power.'" *Id.* at 562. The second category "encompasses those powers sometimes said to arise from the nature of the court," which refers to "powers implied from strict functional necessity." *Id.* The Supreme Court "termed the contempt sanction 'the most prominent' of these powers." *Id.* (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980)). The third form of inherent authority "implicates powers necessary only in the practical sense of being useful," and is said to be "'rooted in the notion that a federal court, sitting in equity, possesses all of the common law equity tools. . . to process litigation to a just and equitable conclusion.'" *Id.* at 563 (quoting *ITT Community Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)).

Assessing a court's inherent power to sanction an attorney against this backdrop, the Third Circuit in *Eash* discussed how a court's "broad power to discipline attorneys as officers of the court for misconduct not properly categorized as contempt is substantially different from the

---

[4] In *Eash,* the Third Circuit overruled *Gamble v. Pope & Talbot, Inc.,* 307 F.2d 729 (3d Cir. 1962), which had held that a district court lacked the inherent authority to impose a fine on an attorney who had failed to file a pretrial memorandum in a timely fashion. The *Gamble* Court considered such a fine equivalent to a finding of contempt. The decision in *Gamble* was promptly criticized; other circuit courts rejected the result and reasoning as "unduly narrow"; and the Supreme Court "significantly undercut *Gamble*" in *Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980). *Eash*, 757 F.2d at 565, 568. Based on its review of the issue, the Third Circuit overruled *Gamble. Id.* at 568.

9

contempt power." *Id* at. 565-66. It cited *Roadway*, 447 U.S. at 765, for the proposition that a federal court possesses the power "to sanction errant attorneys financially both for contempt and for conduct not rising to the level of contempt." *Id.* at 566. It agreed with the Ninth Circuit that "a reasonable 'monetary sanction for failure to carry out [an attorney's] special responsibility [to the court] . . . differs from the more severe infraction of contempt for which attorneys and members of the general public can become liable.'" *Id.* (quoting *Miranda v. S. Pacific Transp. Co.*, 710 F.2d 516, 521 (9th Cir. 1983)). According to *Eash*, "myriad violations of court rules, deadlines, or orders," *id.* at 566, would be grounds to impose this sort of financial sanction, grounded in "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 564 (quoting *Link v. Wabash RR Co.*, 370 U.S. 626, 630-31 (1962)).

Over fifteen years after adjudicating *Eash*, the Third Circuit in *Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183 (3d Cir. 2001), "emphatically stated that federal courts retain the inherent power 'to sanction errant attorneys financially both for contempt and for conduct not rising to the level of contempt.'" *Id.* at 199 (quoting *Eash,* 757 F.2d at 566). It noted that "[r]equiring courts to await the conclusion of extensive investigation and prosecution procedures following every courtroom infraction would greatly compromise the court's ability to direct and control the proceedings." *Id.* The Court went on to say that, before invoking its inherent authority, a court must consider a number of factors:

> Of course, 'because of their very potency, inherent powers must be exercised with restraint and discretion.' 'A primary aspect of [a district court's] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.' Thus, a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified. . . . The court must consider the conduct at issue and explain why the conduct warrants sanction.

*Id.* at 200 (quoting *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994)).

### B. Analysis

As the record clearly shows, the $200.00 sanction that the Court assessed against Attorney Andrews was not levied as a result of a finding of criminal contempt, but rather was a sanction under the Court's inherent powers to manage its docket in response to an attorney's failure to carry out his "'special responsibility'" to the Court. *Eash*, 757 F.2d at 566 (quoting *Miranda*, 710 F.2d at 521). Accordingly, the Court will deny the Motion for Reconsideration—as its premise, and thus its reasoning, are incorrect.

The Court's Order to Show Cause why sanctions should not be imposed explicitly stated that it was contemplating sanctioning the Government's counsel based on the Court's

> inherent power to impose a monetary penalty on counsel as a sanction for their repeated failures to comply with the Court-ordered deadlines noted herein. *See Goldstein v. Forbes [(In re Cendant Corp.)]*, 260 F.3d 183, 199 (3d Cir. 2001); *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 566 (3d Cir. 1985).

(Dkt. No. 174). Further, at the conclusion of the Show Cause hearing—after a full discussion of the Government's explanations and the Court's concerns—the Court stated: "[P]ursuant to the inherent powers of the Court to control its docket, to manage the business before it, I'm going to fine you $200." (Dkt. No. 187 at 31). Citing his "inexcusable" failures and his "unacceptable" responses, the Court's written Order followed, levying the $200.00 fine "as a sanction for [counsel's] failure to timely respond" to the Court's Orders. (Dkt. No. 177).

It is thus clear that the Court's Order to Show Cause, and its oral and written Orders setting forth the fine contain no indicia of criminal contempt. Similarly, while Attorney Andrews stated during the Show Cause hearing and in his written submission that he did not intend to

11

violate the Court's Orders, that focus was misplaced because the Court's concern was elsewhere—specifically, with the "careless lackadaisical attitude" that counsel's conduct reflected. (Dkt. No. 187 at 29).[5] As the Court explained: "[I]t has nothing to do with intent, but it has everything to do with the amount of care and attention that the Government and that you as an attorney representing the Government [are] paying to the Court's Orders and the Court's expectations." *Id.* at 29-30.

In sum, rather than criminal contempt, the fine fits squarely within the context of those lesser sanctions contemplated in *Eash* and *In re Cendant,* and is grounded in the inherent power of the Court to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Eash*, 757 F.2d at 564 (quoting *Link*, 370 U.S. at 630-31); *see id.* at 566 (sanctioning attorney for an "unjustified failure to discharge an administrative responsibility as an officer of the court") (citing *Miranda,* 710 F.2d at 521). Thus, the Government's argument premised on criminal contempt is rejected.

The Government's erroneous premise infects its entire analysis because, when analyzed in the proper context, the sanction imposed meets all of the necessary prerequisites. First, the sanction was supported by an "adequate factual predicate." Attorney Andrews failed to respond to the November 13, 2014 and December 12, 2014 Court Orders by the deadlines contained in each Order. The "careless, lackadaisical attitude" which counsel displayed and which underlay his failures was palpable. Counsel's problems began with his initial determination that the November 13, 2014 Order that "the Government shall have up to and including December 8,

---

[5] That "careless lackadaisical attitude" was no more evident than from counsel's own words at the Show Cause hearing as he described his thought process—which in his mind justified not taking immediate action after realizing that he had missed the deadline set forth in the Court's second Order: "[I]n my way of thinking, you're already late. You already missed the deadline. If it's a violation of the Court's Order, it already is." (Dkt. No. 187 at 18).

12

2014 within which to file its Response" was "permissive" rather than mandatory. After the Court brought to the Government's attention its failure to respond and provided a second deadline for the Government's Response, counsel then "misread" the Court's one-sentence Order, resulting in his belief that the Government's response was due on December 16 rather than December 15. Then, when counsel realized, at 6:00 a.m. on December 16 that he had missed the second deadline, he took no action, purportedly because he intended to file the Government's Response later that day. In his own words, "in [his] way of thinking," he had "already missed the deadline," (Dkt. No. 187 at 18), and, "[i]f it's a violation of the Court's Order it already is." *Id.* This record speaks volumes in terms of a factual predicate for the sanction.[6]

Second, counsel's failures warranted a sanction. Even if one were to assume that the Court's November 13, 2014 Order was unclear, or that counsel had a mistaken but reasonable belief that the Court's November 13 Order was permissive, the Court's December 12, 2014 Order provided the Government with a second deadline for a response. Thus, counsel was not called upon to show cause upon missing the first deadline, or in any way sanctioned in the wake of the first misstep. However, although given a second opportunity to respond—in other words, a chance to "right the wrong"—counsel failed to pay sufficient attention to the second Order to ensure a timely filing. Counsel then compounded the problem by adopting, in effect, a "so what"

---

[6] As the Court pointed out at the Show Cause hearing, this same lack of care was reflected in the Government's one-and-one-half page Response to the Order to Show Cause, where the first paragraph provided that "[t]he Government contends that it should be sanctioned for failure to comply with this Court's orders for the reasons mentioned below"—which obviously was missing the word "not," and a statement on the second page of the document that the Government "did intend to, nor did it consciously, ignore the Court's Order"—again missing the word "not." (Dkt. No. 187 at 30).

attitude when he chose to take no action after realizing that he had missed the second deadline.[7] A sanction under these circumstances is certainly warranted.

Third, the sanction was tailored to address the harm identified. As discussed above, counsel's failures were palpable. Moreover, as result of counsel's failures, the Court was required to file a second Order establishing a new deadline for the Government's Response, issue an Order to Show Cause, and conduct a Show Cause hearing. Thus, the fine was appropriate for the harm identified, including the consequential expenditure of time and resources that it caused the Court. In addition, the fine was in accord with other fines imposed by this Court on attorneys who have failed to comply with Court Orders. *See Thomas v. Roberson*, Civ. No. 08-75 (Aug. 18, 2014) (sanctioning attorney $250.00 for failing to respond to a Court Order and failing to provide a complete response to a second Court Order); *Robles v. Government of the Virgin Islands*, Civ. No. 2012-069 (Aug. 1, 2014) (sanctioning attorneys for plaintiff and defendant $200 each for failures to comply with Court-ordered deadline for filing certain documents).

In view of the foregoing, the prerequisites for imposing a fine pursuant to the inherent powers of the Court were satisfied under the circumstances here.

The Government's remaining arguments do not alter this conclusion. The Government first maintains that the language in the Court's November 13, 2014 Order was permissive. However, the Court has routinely used and intended the language that a party "shall have up to

---

[7] As discussed at the Show Cause hearing, counsel's carelessness and lackadaisical attitude were so manifest that, upon realizing that he had missed the second deadline, he did not even file a motion for extension of time to request the Court's indulgence and let the Court know that he intended to file a Response later that day. Instead, he chose to leave the Court with the belief that the Government had simply chosen to ignore two of the Court's Orders. Counsel's inability to explain how the Court could have known of his intentions in the absence of a filing is a testament to the inexplicable nature of counsel's inaction and the justifiable basis for a sanction.

14

and including X date within which to file its Response" to signify a mandatory filing,[8] and has distinguished the permissive nature of a Reply by using the language "within which to file any Reply" or "a Reply, if any." Indeed, the directive to the Defendants to clarify their Notice—which certainly was not permissive—contained the same language as the directive to the Government.[9]

In any event, as noted earlier, even assuming that the Court's Order was unclear, this does not aid the Government's cause. The Court did not respond to the Government's initial failure to respond by imposing a sanction, but rather advised the Government that the deadline had passed and provided another deadline within which to respond. It was only when the Government failed to respond yet again that the Court issued its Order to Show Cause. And, it was only because of counsel's unacceptable explanations for his series of failures that a sanction was imposed.

The Government's additional arguments that counsel did not act willfully in violating the Court's Orders and that counsel's actions did not obstruct the administration of justice so as to warrant the use of the Court's summary contempt power are inapt. As discussed earlier, while those factors are applicable in the criminal contempt context, they do not apply when a sanction

---

[8] Thus, even if the Government believed that a response to the *merits* of Wrensford's Notice of Clarification was unnecessary because no relief was sought, a filing with the Court so indicating would have been responsive to the Court's Order.

[9] Following this line of argument, the Government claims that it is unfair to sanction Government counsel for not filing a Response when Defendant Muller did not file, or join in, Defendant Wrensford's Notice of Clarification in response to the Court's November 13 Order. This argument misses the mark. Muller filed a one-sentence Notice of Joinder to Wrensford's original Notice. Under the circumstances, Wrensford was clearly the initiating party. Accordingly, whether or not Muller filed a Notice of Joinder in the Notice of Clarification is really a non-issue in view of Wrensford's sixteen-page Notice of Clarification. As the prosecuting entity, and thus the opposing party to both Wrensford and Muller, the Government was obviously in a very different position than Muller as it pertained to the requirement of a response, in accordance with the Court's Order, to the pending Notice of Clarification.

for conduct not rising to the level of contempt is imposed—as here—pursuant to the inherent authority "necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Eash,* 757 F.2d at 566 (citing *Link,* 370 U.S. at 630-31).

### III. CONCLUSION

For the reasons set forth above, the Court finds that the December 16, 2014 Order issued pursuant to its inherent authority, and directing Attorney Andrews to pay $200.00 as a sanction for his failure to timely respond to the Court's November 13 and December 12, 2014 Orders, was in accordance with the applicable law. *In re Cendant*, 260 F.3d 183, 199 (3d Cir. 2001); *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 566 (3d Cir. 1985). Because there was no clear error of law or fact, and vacatur of the Order is not necessary to prevent manifest injustice, the Government's Motion for Reconsideration (Dkt. No. 182) will be denied. An appropriate Order accompanies this Memorandum Opinion.

Date: November 30, 2015 _____/s/_____
WILMA A. LEWIS
Chief Judge